15713

BEAUFORT v. RUBEN

(33 S. E. (2d), 891)

*Mr. Nathan Jollies,* of Augusta, Ga., and *Messrs. Williams & Busbee,* of Aiken, S. C., Counsel for Appellant,

*Mr. Norman E. Cullum,* of Aiken, S. C., represented the Respondent as Counsel.

February 15, 1945.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The issues presented by this appeal arose out of an ejectment proceeding in a Magistrate Court between landlord and tenant, and involves an application of Rent Regulations for Housing, of date June 1, 1943, issued by the Office of Price Administration under the Federal statute. 50 U. S. C. A., Appendix, § 902.

Upon the petition of the landlord, wherein it was alleged that the tenant was holding over after the termination of his lease, a rule was issued by the magistrate requiring the tenant, Harry Ruben, to show cause why he should not vacate the dwelling house in the City of North Augusta, occupied by him. The petitioners, F. B. Beaufort, Jr., and his wife, Cecilia Bryngelson Beaufort, owners of the property, also sought under the Federal Rent Regulations, to recover possession thereof, for immediate use and occupancy as a dwelling for themselves. A hearing was held before the magistrate, and at the conclusion of the evidence the writ of ejectment prayed for by the landlords was issued. It was based upon two grounds: (1) that the tenant was holding over, and in possession of the premises after the termination of his lease, which expired on July 1, 1944; and (2) that the landlords desired possession of the premises for their own use and occupancy, the latter being a

specific ground for the removal of a tenant under Federal Rent Regulations.

Upon appeal to the Circuit Court the judgment of the Magistrate Court was affirmed.

The main question raised by the appeal is whether the landlords under Federal Rent Regulations (Page 9, Section 6) sought in good faith to recover possession of the house and lot in question for immediate use and occupancy as a home for themselves. The record unquestionably shows that the lease held by appellant expired on July 1, 1944, and if the local law be considered alone, he was subject to ejectment. But the main issue here has to do with the federal regulations as above indicated.

A review of the evidence becomes necessary: The appellant and respondents originally entered into a written lease of the premises, which commenced on July 1, 1941, and ended July 1, 1942, at a rental of $42.50 per month, payable in advance. When this contract terminated, they immediately entered into another lease which became effective July 1, 1942, and expired July 1, 1944, at a rental of $47.50 per month, payable in advance. Appellant paid the rent in accordance with this increased schedule until October 1, 1942, when the Federal Rent Regulations became effective, relating back to March 1, 1942, in consequence of which the rent was automatically reduced to $42.50 per month.

In the early part of 1943, the landlords and tenant became involved in a dispute as to whether or not the terms of the lease had been breached—one of the grounds being that the tenant had failed to pay his rent promptly when due. Each party employed counsel and prepared to have the matter settled in Court, but before litigation was actually started they reached an agreement which was reduced to writing and duly executed, wherein it was stipulated that the tenant should remain in possession of the premises until the termination of the lease, to wit: July 1, 1944.

In consideration of the compromise, the appellant paid to the landlords the sum of $115.00, which sum covered attorney's fees and the expenses incurred. The agreement entered into between the parties at the time this threatened litigation was settled, to wit: January 30, 1943, provided: "It is understood that this settlement is in no way to constitute additional rent, but is solely for the benefit of Harry Ruben in allowing him to continue to occupy the dwelling when the said F. B. Beaufort, Jr., wishes to have said dwelling in order that he and his wife may occupy it."

The agreement likewise recites that the parties referred the question of the alleged breach of the lease and the threatened ejectment proceeding by the landlord to the Area Director of the Office of Price Administration at Augusta, and that the Director agreed that it was a *bona fide* dispute, and notified the parties that his office had no objection to the institution of the proposed ejectment proceeding by the landlord to dispossess the tenant.

The day following the execution of the agreement, the appellant notified the respondent by letter that he would vacate the premises at the expiration of the lease, on July 1, 1944.

On March 24, 1944, the respondent, F. B. Beaufort, Jr., wrote a letter to appellant in which he notified him that the lease would not be renewed at its expiration, and that he would expect possession of the premises on July 1, 1944. This letter, among other things, stated:

"It is with regret that I write you the following lines. I hope that after reading them you, Louise and I can still be friends and that you all realize that Celia and I regret the position we find ourselves in with you and Louise in regard to the house.

"Believe me, Harry, I have tried to think of a way that would leave you and Louise at 208 Summit and keep Celia happy too as we want to do all we can for our wives.

Celia and I will never be able to build or buy another house now that we are bringing up a family, and we feel that you and Louise can easily do either at any time you choose."

Again, on June 10, 1944, respondent wrote appellant that he had been informed by appellant's attorney that appellant had been unable to find a suitable house, and intended to attempt by litigation to remain in possession of respondent's dwelling. In this letter respondent again reiterated his desire and intention to repossess the rented premises and occupy them as his permanent home.

It appears from the testimony that respondent owned another dwelling house in North Augusta, which he occupied with his wife and child, which was referred to as a comfortable abode.

Shortly after the expiration of the lease, this ejectment proceeding was commenced. All notices required by the Rent Regulations were served upon the Area Director in Augusta, Georgia, and he was likewise notified of the day of the hearing before the magistrate. His office did not intervene.

Appellant contends that the evidence does not show that respondent seeks in good faith to recover possession of the rented premises for the purpose of occupying them as a dwelling place for himself and his family. Nor, it is urged, does the evidence show any necessity on the part of the respondent to move from his present home to the rented premises; or that one house is more convenient than the other. It is argued that the whole matter is the outgrowth of respondent's effort to obtain increased rent.

Section 6, Page 9, of Rent Regulations, with subsection 6, provides:

"Section 6. Restriction on removal of tenant.— So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall

any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, unless:

*    *    *

"(6) The landlord owned, or acquired an enforceable right to buy or the right to possession of, the housing accommodations prior to the effective date of this Maximum Rent Regulation, and seeks in good faith to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself."

The Circuit Court in its judgment affirming the order of the Magistrate, held that it was the *bona fide* desire and intention of respondent to repossess the rented premises so that he and his family might occupy the residence as a dwelling; that they were in good faith seeking to do this; and that this conclusion was not overcome by the fact that the respondent owns and occupies another dwelling.

Appellant calls our attention to the several cases noted in the annotation in 147 A. L. R., 1446, 1457 and 1459, and especially the case of *Brown v. Wood*, U. S. D. C., N. D., Cal., 59 F. Supp., 872. In that case it was held that the landlords would be enjoined in attempting to evict a tenant on the alleged ground that such landlords sought the use and occupancy of the premises for themselves, where the evidence made it clear that the landlords were not acting in good faith: as where it was shown by the evidence that they had demanded increased rents; that they had another dwelling house; and that one of them in effect admitted that

the eviction of the tenant was because of his refusal to pay the higher rental.

However, from a careful examination of the present record, it does not appear that the preponderance of the evidence is against the conclusions of the Circuit Court. Not only is there no admission here, direct or reasonably implied, that respondents sought repossession of the rented premises because of their failure to obtain a higher rent, but it is convincingly and most persuasively shown that respondents wished to recover possession for the immediate use and occupancy as a home for themselves.

The test of an owner's right to recover possession of housing accommodations for his own immediate use and occupancy, is not his necessity, but his good faith. Necessity may, of course, be considered in connection with good faith, but it is not necessarily controlling.

Appellant contends that the sum of $115.00 hereinbefore referred to should be deemed and considered as the payment of excess rent, and that such amount should be applied to rent accruing after July 1, 1944.

We agree with the lower Court that the evidence clearly shows that there was no intention on the part of either party that this $115.00 payment should extend the lease beyond its expiration date.

Finally, it is submitted that the appellant was denied due process of law, in violation of the Federal Rent Regulations. All notices required to be given to the Office of Price Administration were duly given, and that Authority did not intervene or express any objection to the procedure followed by the respondents. We gather, however, from the exception raising this issue, that in the petition of appellant addressed to the Magistrate Court, it is stated that appellant refused to surrender possession of the rented premises, although he was holding over after

the termination of his lease; whereas we infer that the petition should also have included as a ground for removal, that the respondent desired the rented premises as a dwelling for himself and family. However, the case was tried upon this theory. The appellant could not have been misled or in any way prejudiced. It is conceded in appellant's brief that the question of good faith on the part of the respondent in repossessing the property as a dwelling for himself was the main issue in the case. And the record shows that this question was specifically, and in our opinion correctly, passed upon, both in the order of the magistrate and in the order of the Circuit Court.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR, and OXNER concur.