**BRAUER v. O'DANIEL.**

No. 368.

Municipal Court of Appeals for the
District of Columbia.

May 9, 1946.

Maurice A. Guervitz, of Washington, D. C., for appellant.

D. Heywood Hardy, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

CAYTON, Chief Judge.

Plaintiff below brought suit for possession of an apartment in premises 115 Second Street, N.E., a four story, fourteen unit, walk-up apartment building. He claimed under Section 5 of the District of Columbia Emergency Rent Act[1] that he requires and "seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling." Trial was by jury and resulted in a verdict and possessory judgment for plaintiff. Defendant appeals.

The evidence of plaintiff was uncontradicted and was in substance as follows: Plaintiff is a United States Senator from Texas. For four years he had lived in cramped hotel quarters and was inconvenienced because of insufficient living and working space. During this time he had attempted personally and through agents to find a satisfactory home; and in March 1945 he arranged to purchase the building involved in this case.

On May 2, 1945, a letter was sent to all tenants, including defendant, informing them that the plaintiff had purchased the

[1] Code 1940, § 45—1601 et seq.

property and that the letter was being sent in order to allow them as much time as possible to find other quarters. By the end of July 1945, personal conversations had been had with all the tenants, including defendant, in which they were informed of plaintiff's intention to occupy the building as a home. Before July 31, 1945, three of the fourteen tenants had vacated. On that day the statutory thirty-day notice to quit was served on the remaining tenants. By November 1, 1945, all but three tenants had vacated.

The plaintiff's evidence disclosed that both as a private citizen and later as Governor of his state he had been accustomed to commodious living quarters but that in his hotel in Washington he had been unable to accommodate even his two sons in military service when they visited him on furlough. In Texas he had been in the custom of doing much of his official work at home where he had an extensive library, but when he came to Washington he had been forced to leave this library behind because he was unable to find a suitable place for it.

In his searches in Washington he had hoped to locate a home near the Senate Office Building but had also looked at homes in other sections of the city. He preferred a house which was "not fenced in" but had nevertheless looked at row-type houses as well. When he purchased the building here involved his interest was only in its residential suitability and not in its commercial aspects. After buying this building he sold his Fort Worth home and used the proceeds to complete the local purchase. He purchased this building because of all the properties he had seen in Washington it most closely suited his requirements as to space, location, facilities, and price. He testified that with his wife and son he was now occupying a part of the building.

Defendant was the only witness in his own behalf. He testified that he had lived in apartment No. 12 in the premises in question for eight years. He described the nature of his employment; he testified that plaintiff had sent for him to talk about the apartment, and he also told the jury the number of steps from the bottom to the top floor. This was the entire extent of his testimony and he was not cross-examined. Defendant thereupon moved for an instructed verdict which was denied.

It was agreed that the only issue was the good faith of the plaintiff. The court submitted the case to the jury under instructions which explained among other things Section 5(b), sub-sections 2 and 4, and defined "housing accommodations"; the court charged them also as to the meaning of good faith and of the word "immediate." At the conclusion of the charge the trial judge inquired of counsel whether either of them desired any additional instructions or had any objections to the instructions as given and both attorneys answered in the negative. As we have said, the jury returned a verdict for plaintiff for possession of the apartment in suit.

In bringing this appeal defendant assigns several errors, all of which relate to the sufficiency of the evidence to support the verdict.

Defendant relies heavily upon the fact that the apartment house would not be available for immediate use and occupancy as a family residence; that plaintiff himself had estimated the cost of alterations to make it available for occupancy at between fifteen and twenty thousand dollars; that no repair work had been started and none would be started until "material and labor are available." But as we see it the fact that a house is not available for occupancy as a family residence until extensive alterations and repairs are completed is a matter of evidence to be considered along with the other evidence in the case, in determining the good faith of an owner seeking possession. "We agree that in examining the question of good faith all circumstances should be considered which will shed light upon whether a proper case for possession has been established." Gould v. Butler, D.C. Mun.App., 31 A.2d 867, 869. In the case just cited we held that the word immediate as used in the statute need not always mean desperate. And it seems to us that the jury was fully justified in finding that the need of the plaintiff was bona fide and immediate, within the meaning of the Rent Act.

There was evidence that after the alterations have been completed plaintiff will have only slightly more room than in his home in Texas. The evidence also revealed that though some apartments in the building have been vacant for several months he has made no attempt to rent them out. This was an element properly considered by the jury as indicative of plaintiff's state of mind, in determining the question of his good faith.

Section 5 of the Rent Act provides protection for tenants by preventing their arbitrary ouster during the critical housing shortage. Gould v. Butler, supra. But the section does not ignore the rights of an owner who brings himself within the provisions of the section and shows a real immediate need for his own property. Shaffer v. Bowes, D.C.Mun.App., 31 A.2d 690; Colwell v. Stonebraker, D.C.Mun.App., 31 A.2d 866; Staves v. Johnson, D.C.Mun. App., 44 A.2d 870.

Under the circumstances, the evidence for plaintiff being so strong, and there being no contradiction by defendant, it would have been plainly erroneous to have directed a verdict for defendant. At the least, therefore, defendant received all he was entitled to by having the case submitted to the jury. Moreover, as we have said, it was submitted under instructions in which defendant acquiesced.

We are satisfied that the record is entirely free of error.

Affirmed.